IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM FRANKLIN DOBROVOLNY,

      Plaintiff,                    No. CIV S-03-2244 FCD GGH P

   vs.

C.K. PLILER, Warden, et al.,          ORDER &

      Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's "request for judicial notion and sanction [sic] and for summary judgment," which defendants opposed and defendants' cross-motion for summary judgment to which plaintiff filed an opposition and to which defendants, in turn, filed a reply.

        By order filed on September 29, 2004, plaintiff's September 17, 2004 "request for judicial notice and sanction and motion for summary judgment" was denied without prejudice for plaintiff's failure to serve the document upon defendants in compliance with Fed. R. Civ. P. 5 and Local Rule 135(a).

        By order filed on December 8, 2004, plaintiff was directed, within 15 days, to file proof of service upon defendants of his October 29, 2004 filing entitled "request for judicial

1

1  notice and sanction [sic] and motion for summary judgment," a duplicate of the September 17,

2  2004 filing, which also had no certificate of service attached.

3          On December 20, 2004, plaintiff filed a certificate indicating that he had filed and

4  served the document at issue on October 7, 2004.  Therefore, the court will deem plaintiff's

5  motion for sanctions and for summary judgment as having been filed on October 7, 2004.  By

6  order filed on March 11, 2005, defendants were directed to show cause for their failure to file a

7  response to plaintiff's motion for summary judgment and to provide any such response within 15

8  days.  Defendants' March 25, 2005 response discharges the order to show cause.  Defendants will

9  be permitted to proceed on their opposition and cross-motion for summary judgment filed on

10  March 28, 2005, to which cross-motion plaintiff filed his opposition on May 2, 2005; defendants'

11  filed their reply to plaintiff's opposition on May 6, 2005.

12  Complaint

13          This action proceeds on a complaint filed on October 28, 2003, as modified by

14  orders filed on January 21, 2004 and May 26, 2004, against defendant Correctional Officers

15  (C/O's) Okray, Durant and Howard at California State Prison (CSP)-Sacramento(Sac).

16          On February 25, 2003, plaintiff received surgery for removal of a ruptured disc at

17  Doctors Hospital in Manteca.  The next day plaintiff was returned to CSP-Sac and placed in the

18  outpatient housing unit (OHU).  Despite plaintiff's repeated requests to stay in the OHU until he

19  was completely recovered, he was placed on C-yard and returned to the general population on

20  March 19, 2003.  Complaint, attachment, p. 1.

21          On March 26, 2003, plaintiff, along with three black inmates also to receive

22  physical therapy, was transported by defendants Okray, Durant and Howard to A-facility,

23  whereupon defendants placed all four inmates in the infirmary holding cell.  Each inmate had his

24  hands cuffed from behind except one black inmate who had a cane.  One Mexican inmate was

25  already in the cell, was hand-cuffed in front, and had a cane.  The Mexican (or Hispanic) inmate

26  from B-Facility belonged to an "ethnic group" known as "southsiders"; another such group in B-

Facility is known as "whites." These two groups (or gangs) have "on sight" orders, which means that members of either the whites or southsiders are order to attack members of the other gang when they see each other. Id.

Three or four minutes after being placed in the holding cell, plaintiff was struck from behind on his back so forcefully that his legs buckled and he was forced to sit down. Plaintiff was struck a second time as he turned to face his attacker, this time on his upper right forehead, opening up a scalp wound that required four stitches. Turning away from the second blow, plaintiff was struck again on the upper back portion of his skull. The fourth and final blow struck his left forearm. Id.

The attack was witnessed by an unnamed M.T.A. , who stood outside the holding cell in the hallway, where four C/O's (none of whom are identified) stood also. Upon seeing the assault the C/O's entered the holding cell, the floor of which had blood from plaintiff's scalp wound, and secured the attacker, after which plaintiff was removed to the medical treatment area, still hand-cuffed. C/O's from "S and I" took photographs of plaintiff's injuries. Complaint, attachment, pp. 1-2.

About half an hour later, Dr. Windell, not a defendant, was allowed to stitch plaintiff's head wound. Plaintiff was then placed in a holding cell in the A-Facility breezeway, where plaintiff was left to stand for six hours despite his back pain from his recent surgery as well as from the attack he had just sustained. Plaintiff was then placed in administrative segregation on the second tier in B-Facility until April 3, 2003, despite doctor's orders that he was to be placed in the lower bed of the lower tier due to his surgery. Complaint, attachment, p. 2. Plaintiff sues for money damages.[1]

---

[1] Plaintiff's claims for both money damages and injunctive relief against defendants Pliler and the Director of the California Department of Corrections were dismissed with leave to amend; plaintiff chose not to amend. See Order, filed on January 21, 2004 and Order, filed on March 30, 2004, and Order, filed on May 26, 2004, adopting Findings and Recommendations, filed on March 30, 2004.

1    Plaintiff's Request for Judicial Notice and Sanctions

2              To the extent that plaintiff seeks judicial notice for an opposition he filed on July

3    28, 2004, to defendants' motion for extension of time to file a motion to dismiss, such notice is

4    unnecessary because it is already a part of the record of this case.  Plaintiff also seeks sanctions

5    for defendants having filed an answer, rather than a motion to dismiss, for which motion they had

6    sought an extension of time, and for having done so some nineteen (19) days beyond the deadline

7    they had been granted in the August 3, 2004 order, defendants having been granted until August

8    20, 2004 to file their response to the complaint but having not filed an answer until September 8,

9    2004.  It appears that defendants did not seek a further extension of time before filing their

10   answer more than two weeks beyond the deadline they had been granted and the court does take

11   judicial notice of this fact which is evident in the court record.[2]  However, defendants having

12   chosen to file an answer rather than a motion to dismiss cannot result in the imposition of

13   sanctions as an answer is a responsive pleading pursuant to Fed. R. Civ. P. 7, and, moreover,

14   hardly works to the prejudice of plaintiff.  Although defendants' response was somewhat dilatory

15   and defendants are cautioned not to exceed court deadlines in future for which they may be

16   subject to sanctions, the court will not impose sanctions on this occasion.

17   Motion for Summary Judgment

18              In this case, both parties move for summary judgment.

19              Legal Standard for Summary Judgment

20              Summary judgment is appropriate when it is demonstrated that the standard set

21   forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

22   there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

23   as a matter of law."  Fed. R. Civ. P. 56(c).

24

25        [2] Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80
     F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126
26   (1981).

1    Under summary judgment practice, the moving party

2    always bears the initial responsibility of informing the district court
     of the basis for its motion, and identifying those portions of "the
3    pleadings, depositions, answers to interrogatories, and admissions
     on file, together with the affidavits, if any," which it believes
4    demonstrate the absence of a genuine issue of material fact.

5    Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986). "[W]here the

6    nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

7    judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

8    to interrogatories, and admissions on file.'" [3] Id.  Indeed, summary judgment should be entered,

9    after adequate time for discovery and upon motion, against a party who fails to make a showing

10   sufficient to establish the existence of an element essential to that party's case, and on which that

11   party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

12   failure of proof concerning an essential element of the nonmoving party's case necessarily

13   renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

14   granted, "so long as whatever is before the district court demonstrates that the standard for entry

15   of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.  If

16   the moving party bears the burden of persuasion at trial, that party bears the burden of

17   establishing that no record evidence supports or precludes the grant of summary judgment.  In re:

18   Sunset Bay Associates, 944 F.2d 1503, 1510 n. 7 (9th Cir. 1991), citing Celotex, supra, at 325,

19   106 S. Ct. 2553-2554.

20   \\\\\

21   \\\\\

22

23        [3] "[M]aterials on file..." will be viewed "in the light most favorable to the nonmoving
     party."  High Tech Gays. v. Defense Indus. Sec., 895 F.2d 563, 574 (9th Cir. 1990), citing
24   Ashton v. Cory, 780 F.2d 816, 818 (9th Cir. 1086).  "This is true even though the court was
     presented with cross-motions for summary judgment; each movant has the burden of presenting
25   evidence to support its motion that would allow the district court, if appropriate to direct a
     verdict in its favor." High Tech Gays, supra, quoting Barhold v. Rodriguez, 863 F.2d 233, 236
26   (2nd Cir. 1988).

1    If the moving party meets its initial responsibility,[4] the burden then shifts to the

2    opposing party to establish that a genuine issue as to any material fact actually does exist.

3    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

4    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

5    not rely upon the allegations or denials of its pleadings but is required to tender evidence of

6    specific facts in the form of affidavits, and/or admissible discovery material, in support of its

7    contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

8    106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

9    material, i.e., a fact that might affect the outcome of the suit under the governing law, see

10   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

11   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

12   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

13   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

14   In the endeavor to establish the existence of a factual dispute, the opposing party

15   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

18   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19   genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

20   56(e) advisory committee's note on 1963 amendments).

21   In resolving the summary judgment motion, the court examines the pleadings,

22   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

24   477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

25

26   ⁴ "However, no defense to an insufficient showing is required."  Great Hawaiian Financial
Corp. v. Benjamin AIU, 863 F.2d 617, 619 (9th Cir. 1988).

1   placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

2   at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

3   opposing party's obligation to produce a factual predicate from which the inference may be

4   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

5   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

6   party "must do more than simply show that there is some metaphysical doubt as to the material

7   facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

8   nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct.

9   1356 (citation omitted).

10          On May 7, 2004, the court advised plaintiff of the requirements for opposing a

11  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

12  F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

13  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

14  Plaintiff's Motion for Summary Judgment

15          Plaintiff moves for summary judgment setting forth as undisputed facts that he

16  was brutally assaulted as set forth in his complaint, that defendants failed to make any inquiry or

17  take any steps for plaintiff's safety before placing him, a white inmate, in the holding cell with

18  inmate Bonsalo, a Mexican inmate from B-Facility; and that all C/O's were aware that Mexicans

19  and whites in B-Facility were "in violent conflict" at the time that plaintiff, housed in C-Facility,

20  was placed in the holding cell.  Motion for Summary Judgment (MSJ), pp. 2-3.  A further fact

21  that plaintiff alleges as not in dispute is that he has, as a direct result of the blows from Bonsalo's

22  cane to his back one month after he had had major back surgery, has suffered continuous back

23  pain.  MSJ, p. 3.  Plaintiff states that he does not have access to his medical records but that they

24  will verify that he has been on pain medication since the assault occurred.  Id.

25          Plaintiff also notes facts that remain in dispute, which include that defendants

26  [may argue] that they are not responsible for his safety when plaintiff is transported from one

1   facility to another and placed in a holding cell already occupied by other inmates and that a

2   Mexican inmate from B-Facility posed no danger to plaintiff.   Id.

3           Before reaching the opposition, the court notes that plaintiff has failed in his

4   motion to comply with Local Rule 56-260(a), which requires that "[e]ach motion for summary

5   judgment ...shall be accompanied by a "Statement of Undisputed Facts" that shall enumerate

6   discretely each of the specific material facts relied upon in support of the motion *and cite the*

7   *particular portions of a pleading, affidavit, deposition, interrogatory answer, admission or other*

8   *document relied upon to establish that fact."* [Emphasis added].  Moreover, plaintiff, himself,

9   sets forth material facts that remain in dispute.

10  Opposition/Cross-Motion for Summary Judgment

11          In their opposition, defendants concede that plaintiff was attacked by a Hispanic

12  inmate, Bonsalo, while both inmates awaited medical appointments in the A-Facility medical

13  infirmary.  Opposition (Opp.), p. 3.  In defendants' Separate Statement of Undisputed Facts

14  (DSSUF) filed with their opposition and putative cross-motion, defendants also concede with

15  respect to plaintiff's undisputed facts that the assault on plaintiff was brutal and that defendants

16  failed to conduct any inquiry prior to placing plaintiff in the holding cell with Bonsalo, a B-

17  Facility Hispanic inmate, to insure plaintiff's safety.  DSSUF, p. 1.  (Defendants do, however,

18  dispute whether they had any such duty to inquire.  See following discussion.)  Defendants

19  further concede that all correctional officers knew at the time that Mexicans and whites in B

20  Facility were in violent conflict and that plaintiff has suffered continuous pain since the attack.

21  DSSUF, p. 2.

22          As to their own undisputed facts, defendants submit the declarations of defendants

23  Durant, Okray and Howard in support of their contention that defendants Okray and Durant

24  escorted plaintiff from C-Facility, along with two black inmates, at around 9:00 a.m. on March

25  26, 2003, to the CSP A-Facility infirmary, but that it was only defendant Durant who placed

26  plaintiff and the black inmates in the holding area of the infirmary.  See declarations of Okray,

1   Durant and Howard.  Defendant Okray did not assist in placing plaintiff in the holding cell but

2   went instead to check whether the inmates' medical appointments had been cancelled.  Okray

3   decl., p. 2.  Defendant Howard neither escorted plaintiff nor did she place him in the infirmary

4   holding area.  Howard decl., p. 2.  As undisputed facts nos. 8, 9 and 17, defendants state that

5   inmate Bonsalo was limping, using a cane to help him walk and handcuffed in front to be able to

6   use the cane, and was not identified as a "Southsider."  DSSUF, pp. 1-2.[5]

7           Citing pages 1, 6-8, 21, 24, 26, 28 of their exhibit to DSUFF, defendants state that

8   staff outside the holding area saw Bonsalo's attack upon plaintiff, which included striking

9   plaintiff on the head and upper torso with a cane, and ordering him to stop with C/O Sharpe

10  using a side handle baton to block Bonsalo's continued attempts to hit plaintiff.   These

11  documents consist of a crime incident report of the March 26, 2003 battery upon plaintiff signed

12  by Correctional Lieutenant Akin and authorized by the warden, as well as crime incident report

13  supplements by C/O Maccoun, MTA S. Davidson, C/O Sharpe, C/O Adams, C/O Martin, all

14  non-defendants in this action.  According to defendants, it was C/O Sharpe who ultimately

15  pushed Bonsalo away and took the cane, while both Sharpe and C/O Martin re-handcuffed

16  Bonsalo and placed him in another holding cell.  DSUFF nos. 14 and 15.  Defendant Durant

17  maintains that the inmates were being supervised by staff positioned outside the holding area.

18  DSUFF no. 18, citing Durant's decl.  According to defendant Howard, it was she who escorted

19  plaintiff to the emergency room for treatment of his injuries.  DSUFF no. 19, citing Durant decl.

20  and at page 25 of defendants' exhibit, her incident report supplement.  Although defendants cite

21  all three of the defendants' declarations as the basis for DSUFF nos. 20 and 21, that plaintiff did

22

23       [5] As support for the assertion that Bonsalo was limping, using a cane and handcuffed in
24  front, defendants cite p. 26 of their exhibit to the DSSUF, the crime incident report supplement
    filed by C/O Gary Adams, one of the correctional officers who placed inmate Bonsalo in the
    infirmary holding area before plaintiff was placed there.  As support for defendants' contention
25  that inmate Bonsalo was not identified as a Southsider by CDC, defendants cite the first level
    appeal response, dated June 23, 2003, and the second level appeal response, dated July 29, 2003,
26  which are among the exhibits plaintiff attached to his complaint.

1    not alert staff that he was in danger or at risk of being assaulted and that if an inmate believes

2    himself to be in such danger, the inmate will usually alert staff so that injury can be avoided, in

3    fact only the declarations of defendants Durant and Okray speak to those issues; defendant

4    Howard does not address either of these assertions in her declaration.

5    Plaintiff's Opposition

6           Plaintiff relies on the allegations of his complaint and contained in his motion.  Pl.

7    Opp., p. 1.  He asserts that his claims are not admitted by defendants, they remain in dispute.  Id.

8           Plaintiff maintains that all defendants were present when he was placed in the

9    Facility A infirmary holding cell following his transport from Facility C, that all defendants knew

10   about the violent conflict between Facility B Mexicans and whites (which defendants have

11   conceded), that defendants as transporting officers had an obligation to remain with prisoners and

12   to conduct inquiries about other prisoners in a holding cell before placing other inmates inside.

13   Id, at pp. 1-2.  Plaintiff cites no authority for his assertions in his opposition.  But he does aver

14   that had any inquiry preceded his placement with Bonsalo, it would have established that inmate

15   Bonsalo was a B-Facility Mexican inmate who, as a result of the racial or ethnic conflict between

16   B-Facility Mexicans and whites, would attack a white inmate on sight.  Id., p. 2.  Furthermore,

17   inmates from different facilities are not to be placed in holding cells together.  Id.  Plaintiff

18   argues that defendants improperly seek to shift the burden of ascertaining who his enemies might

19   be in such a situation as this, especially where defendants do know the special circumstances

20   surrounding the B-Facility inmates.  Id., at pp. 2-3.  He believes that summary judgment should

21   be entered in his favor and that defendants' cross-motion should be denied as untimely.  Id., at p.

22   3.

23   Defendants' Reply

24          Defendants note that plaintiff submits no statement under oath with his opposition

25   and fails to specify the specific facts of defendants with which he disagrees.  Reply, pp. 1-2.

26   (Plaintiff did sign the complaint under penalty of perjury, but did not do so with respect to his

1  motion for summary judgment or his opposition to defendants' cross-motion).

2  Defendants contend that the reports submitted indicate what happened and that the

3  defendants' declarations establish their duties, as well as the information they had. Id., p. 2.  On

4  this basis, defendants ask that their cross-motion for summary judgment be granted.  Id.

5  As to defendant Howard, who has set forth that she neither escorted him nor

6  placed him in the holding area, defendants contend judgment should be granted in her favor.  Id.

7  As to defendant Okray, who alleges that she did not place plaintiff is the holding area, defendants

8  allege that no liability can attach to her either.  Id.

9  As to defendant Durant, who did place plaintiff into the holding area, according to

10  the defendants, defendants cite the following undisputed facts: that inmate Bonsalo was limping

11  and using a cane to help him walk; that Bonsalo did not attack plaintiff until he rose to his feet

12  (DUSSF nos. 10, 11); that correctional staff were stationed outside the area at issue before,

13  during and after the attack; that Bonsalo has not been identified as a "Southsider."  Id.  Such facts

14  showing that staff was nearby, Bonsalo was not an identified gangmember and that Bonsalo's

15  condition indicated he could reasonably be perceived as not demonstrating a threat to plaintiff,

16  demonstrate that defendant Durant was not deliberately indifferent to plaintiff's rights as

17  guaranteed by the Eighth Amendment.  Id.  Defendants believe that plaintiff's motion should be

18  denied and judgment entered for them on their cross-motion.  Id., p. 3.

19  Discussion

20  Failure to Protect

21  Under the Eighth Amendment, prison officials have a duty to protect prisoners

22  from violence at the hands of other inmates.  Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct.

23  1970, 1976-77 (1994).  In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, the Supreme Court

24  defined a very strict standard which a plaintiff must meet in order to establish "deliberate

25  indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

26  However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

1   which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

2   Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

3   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

4           To succeed on a claim of deliberate indifference to the threat of serious harm or

5   injury by another prisoner, plaintiff must demonstrate that the deprivation of his rights was

6   "objectively, sufficiently serious."  Id. at 834, 114 S.Ct. at 1977.  A prison official violates the

7   Eighth Amendment only when he or she "knows of and disregards an excessive risk to inmate

8   health or safety."  Id. at 837, 114 S. Ct. at 1979.

9           "For a claim (like the one here) based on a failure to prevent harm, the inmate

10   must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Id.

11   at 834, 114 S. Ct. at 1977.  The prisoner must also demonstrate that the defendant had a

12   "sufficiently culpable state of mind."  Id.  This standard requires that the official be subjectively

13   aware of the risk; it is not enough that the official objectively should have recognized the danger

14   but failed to do so.  Id. at 838, 114 S. Ct. at 1979.  "[T]he official must both be aware of facts

15   from which the inference could be drawn that a substantial risk of harm exists, and he must also

16   draw the inference."  Id. at 837, 114 S. Ct. at 1979.  "[A]n official's failure to alleviate a

17   significant risk that he should have perceived but did not...."  does not rise to the level of

18   constitutionally deficient conduct.  Id. at 838, 114 S. Ct. at 1979.  "[I]t is enough that the official

19   acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 842, 114

20   S. Ct. at 1981.  If the risk was obvious, the trier of fact may infer that a defendant knew of the

21   risk.  Id. at 840-42, 114 S. Ct. at 1981.  However, obviousness per se will not impart knowledge

22   as a matter of law.

23           "[D]eliberate indifference entails something more than mere negligence...[but] is

24   satisfied by something less than acts or omissions for the very purpose of causing harm or with

25   knowledge that harm will result."  Hearns v. Terhune, 2005 WL 1529730, at *4 (9th Cir. June

26   30, 2005), quoting Farmer, supra, 511 U.S. at 835, 114 S. Ct. 1970.

1      Motion/Cross-Motion

2          The difficulty in resolving these motions is that neither is free of defect.  In the

3  case of plaintiff, the lack of conformity with Local Rule 56-260 has been noted, as has his own

4  concession that certain facts remain in dispute.  On the face of it, plaintiff has not met his initial

5  burden in the form of a prima facie showing that all of the elements required are met for this

6  court to find that defendants were deliberately indifferent in violation of his Eighth Amendment

7  rights as a matter of law in having placed plaintiff in the holding area where he was beaten by

8  another inmate; this is so even though defendants have conceded that certain material facts are

9  not in dispute, i.e., that plaintiff was brutally assaulted, that defendants failed to conduct any

10  inquiry prior to plaintiff's placement in the holding cell with Bonsalo, a B-Facility Hispanic

11  inmate, to insure plaintiff's safety; that all correctional officers knew at the time that Mexicans

12  and whites in B Facility were in violent conflict; that plaintiff has suffered continuous pain since

13  the attack.  Certain material facts remain in dispute, such as exactly which defendant(s) actually

14  escorted and placed plaintiff in the holding cell at issue.

15          As to defendants' cross-motion, they set forth their grounds for entry of judgment

16  in their favor at the outset: 1) neither defendant Howard or defendant Okray put plaintiff in the

17  infirmary holding area with inmate Bonsalo and 2) defendant Durant had no information that

18  inmate Bonsalo was likely to attack plaintiff and is, therefore, entitled to qualified immunity.

19  However, as to the first ground, in their opposition/cross-motion, with respect to defendants

20  Howard and Okray, while presenting primarily their own declarations in support of the

21  "undisputed fact" that neither of them were present when plaintiff was placed in the relevant

22  holding area, in the face of plaintiff's allegations otherwise, such facts cannot be said to be

23  undisputed.  While it is true that plaintiff should not rely in his opposition on unsworn statements

24  or upon the barely referenced allegations of his complaint (which was submitted under penalty of

25  perjury), even defendants, while arguing that plaintiff's "unsworn" contention that all defendants

26  escorted and placed him in the holding cell at issue should preclude judgment in plaintiff's favor,

13

1    appear to concede that a factual conflict, at least with regard to defendant Howard, requiring

2    resolution at trial may have been created (Opp./C-M, p. 8). Their cross-motion does not go far

3    enough to require judgment in their favor on this issue.

4            The crime incident report itself does not establish who placed plaintiff in the

5    holding cell. The report begins: "On Wednesday, March 26, 2003, at approximately 0925 hours,

6    Officers H. Sharpe and J. Maccoun observed inmate Bonsalo []batter inmate Dobrovolny [] with

7    a cane while inmates were in the holding area for A Facility Infirmary. The inmates had been

8    escorted from B and C facilities for medical treatment and had been placed in the holding area."

9    DUSSF, Exh., p. 1. The supplemental crime incident reports submitted by C/O Maccoun, MTA

10   Davidson, C/O Huska, C/O Sharpe, C/O Adams, C/O Martin, including even that of defendant

11   Howard, do not speak to the facts of who escorted and placed plaintiff in the holding area at

12   issue. Id., pp. 6-8, 20, 21-24, 25-29. Thus, it essentially becomes a dispute between the sworn

13   declarations of the defendants against the sworn allegations of the complaint, which plaintiff

14   stands by in his motion and opposition to the cross-motion, while failing to submit sworn

15   statements appended thereto (as already noted). While it is true that plaintiff in opposition to

16   defendants' cross-motion must do more than rely upon the allegations or denials of his pleadings

17   to establish the existence of a factual dispute, i.e., tender evidence of specific facts in the form of

18   affidavits, and/or admissible discovery material, in support of his contention that the dispute

19   exists, Fed. R. Civ. P. 56(e); Matsushita, supra, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11,

20   defendants' motion and exhibit is inadequate to meet its initial burden to show that there is no

21   genuine material fact as to who actually placed plaintiff in the holding area and who may

22   therefore be subject to liability.

23           As to the second ground of their cross-motion, defendants present no legal

24   argument whatever touching on qualified immunity. While defendants have provided sufficient

25   opposition to, in addition to plaintiff's own failings in formulating an adequately supported

26   \\\\\

14

1   motion, to defeat plaintiff's motion, they have failed to establish entitlement to summary

2   judgment in their cross-motion.

3           Accordingly, IT IS ORDERED that:

4           1.  On March 25, 2005, defendants discharged the court's March 11, 2005 show

5   cause order;

6           2.  Plaintiff's motion for sanctions and for summary judgment is deemed to have

7   been filed on October 7, 2004;

8           3.  The court will deem defendants' March 28, 2005 opposition to plaintiff's

9   October 7, 2004  motion for sanctions and for summary judgment timely filed;

10          4.  Plaintiff's October 7, 2004 request for judicial notice is denied as moot in part

11  and granted in part, as set forth above, and his October 7, 2004 motion for sanctions is denied.

12          IT IS RECOMMENDED that both plaintiff's October 7, 2004 motion for

13  summary judgment be denied and defendants' March 28, 2005 cross-motion for summary

14  judgment be denied and that this matter be re-set for a pretrial conference and for trial.

15          These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within ten days after service of the objections.  The parties are advised

21  that failure to file objections within the specified time may waive the right to appeal the District

22  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23  DATED: 8/5/05                                    /s/ Gregory G. Hollows

24                                                   _____
                                                     GREGORY G. HOLLOWS
                                                     UNITED STATES MAGISTRATE JUDGE
25  GGH:009
    dobr2244.msj

26